[No. D020085. Fourth Dist., Div. One. Jan. 16, 1996.]

ALFRED SINGH, Plaintiff and Respondent, v.
BOARD OF RETIREMENT OF THE IMPERIAL COUNTY
EMPLOYEES' RETIREMENT SYSTEM, Defendant and Appellant.

COUNSEL

Thomas M. Fries, County Counsel, and Walter L. Cress, Assistant County Counsel, for Defendant and Appellant.

Sutherland & Gerber, Lowell F. Sutherland and Neil Gerber for Plaintiff and Respondent.

OPINION

NARES, J.—Alfred Singh, following a 1986 accident which resulted in his disability, then applied to the Board of Retirement of the Imperial County Employees' Retirement System (Board) for a service-connected disability, which application was denied by Board. Singh thereafter sought review of Board's decision in the Imperial County Superior Court, which overturned the denial of disability retirement benefits to Singh.

Board, represented by Imperial County counsel, argues that a 1992 amendment to the California Constitution requires us to reverse the determination of the lower court and reinstate the determination of Board. For the reasons which follow, however, we reject the arguments advanced by Board, and we affirm the judgment entered in the superior court.

### STATEMENT OF FACTS[1]

Singh was employed by Imperial County (County), working as an environmental health specialist III in the health department. Singh's job description required him to perform inspections of swimming pools, food markets, restaurants, water systems, septic tanks, constructions sites, and landfills. Singh also had to possess a valid California driver's license.

Singh regularly, with the knowledge and consent of his supervisors, used his private truck in the conduct of his business on behalf of County. That vehicle was equipped with a County radio permitting Singh to communicate with his own and other County departments. Singh's truck was also equipped with a County-supplied toolbox which contained the tools necessary for Singh to perform his duties.

---

[1]Appellant fails to set forth in the opening brief a concise statement of facts, with citations to the record, as is required by California Rules of Court, rule 13. While respondent points this out, there is no request that we take any step such as striking the opening brief. In the absence of such a request, and in view of the facts that (1) the factual background of this case is uncontested as to any material matter and (2) the appeal raises a question of law only, we proceed to consider the matter despite appellant's noncompliance with the rules.

As a regular part of Singh's duties, he would be required to proceed directly from his home to a work site. On some occasions Singh would, for example, often proceed directly from his home to a landfill which opened at 6 or 7 in the morning in order to perform an inspection. Singh would also often be called on the radio and directed to proceed to a work location before reporting to his office at 8 in the morning.

Singh would drive his vehicle between 1,400 and 2,000 miles a month on County business, and was reimbursed by County for the use thereof. Singh was also part of an emergency response team which was on call 24 hours a day, and Singh was permitted to use his private vehicle to respond to emergency calls.

On the morning of January 31, 1986, Singh got into his vehicle, started the engine, and called in to his office before departing therefor. While Singh was en route from his Holtville home to his office in El Centro, about 7:30 that morning he was hit from behind by another vehicle while stopped at a stop sign. The injuries Singh received from this accident aggravated a pre-existing injury, causing him such pain he determined to seek a disability retirement from Board.

PROCEDURAL BACKGROUND

A. *Administrative Board Proceedings*

On October 11, 1991, Singh filed an application with Board for a service-connected disability retirement. On February 24, 1992, Board denied the application without a hearing. Singh thereafter filed a timely appeal from this denial, and a hearing before Board was held on October 7, 1992.

In the election on November 3, 1992, the voters of the state of California enacted Proposition 162, known as "The California Pension Protection Act of 1992." The enactment amended the second paragraph of section 17 of article XVI of the California Constitution to state: "Notwithstanding any other provisions of law or this Constitution to the contrary the retirement board of a public pension or retirement system shall have plenary authority and fiduciary responsibility for investment of moneys and administration of the system, subject to . . . the following: . . . ."

Previous language, which was superseded by the newly enacted provision, had provided that "Notwithstanding provisions to the contrary . . . the Legislature may authorize the investment of moneys of any public pension or retirement system, subject to . . . the following: . . . ." This amendment was an urgency measure, and took effect immediately upon passage.

On December 16, 1992, Board found Singh was "permanently disabled to substantially perform the usual duties of his County position" but that Singh's "disability is not Service-Connected in that it arose from said automobile accident . . . and that such accident was not in the course of [Singh's] County employment." Board again denied Singh's application for service-connected disability retirement. Singh then requested reconsideration of the denial, which request was itself denied. Singh thus exhausted his administrative remedies.

## B.   *Superior Court Proceedings*

On April 28, 1993, Singh filed a petition for a writ of mandate in the Imperial County Superior Court, seeking review pursuant to Code of Civil Procedure section 1094.5 of Board's decision as to whether his disability arose out of the course of his employment. Singh argued therein the weight of the evidence did not support Board's determination Singh's disability had not arisen in the course of his employment.

While Singh acknowledged that the "going-and-coming" rule normally would preclude an employee from being considered in the course of his employment while he was proceeding to work from his home or to his home from work, he cited the court to a line of cases holding that where an employee must provide a vehicle to fulfill his job requirements, as did Singh, the going-and-coming rule did not apply, and an employee's operation of a vehicle which provided a benefit to his employer permitted a finding that even the use of the vehicle to go to and from work was in the course of an employee's employment.

In opposition, Board argued primarily that the modifications to article XVI, section 17 of the California Constitution, which were enacted by the voters in November 1992, gave Board the "plenary" power to determine Singh's retirement eligibility, and that the exercise of such "plenary" power could not be overturned by the superior court.

Argument on the petition was held on June 22, 1993, and at the conclusion of the hearing the court ruled that "the weight of the evidence here is that . . . this arose out of his employment. [Singh] was in the course of his employment" at the time of the accident ultimately resulting in his disability, and Singh's use of his vehicle to carry County equipment "conveyed a

substantial benefit to the county." Judgment granting the writ of mandate was filed on September 17, 1993.[2] Board now appeals.

## STANDARD OF REVIEW

While the superior court was authorized (as urged by Singh in his petition below in that court) to utilize its independent judgment in determining whether Board's decision was supported by the weight of the evidence (see, e.g., *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 44-45 [112 Cal.Rptr. 805, 520 P.2d 29]),[3] we now review the trial court's determination only to determine whether it was supported by substantial evidence (*Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 72 [64 Cal.Rptr. 785, 435 P.2d 553]; *Bell* v. *Department of Motor Vehicles* (1992) 11 Cal.App.4th 304, 309 [13 Cal.Rptr.2d 830]).[4]

Further, as Board did not request a statement of decision from the trial court, we will presume the trial court found every fact necessary to support its decision. (Code Civ. Proc., § 632; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 [275 Cal.Rptr. 797, 800 P.2d 1227]; *Slavin* v. *Borinstein* (1994) 25 Cal.App.4th 713, 718 [30 Cal.Rptr.2d 745].) Essentially, we thus are determining a question of law alone, as no factual matter is in controversy. With this posture of the case in mind, we proceed to determine the single question presented for review: does the constitutional amendment enacted by Proposition 162 insulate Board's decisions from review in the

---

[2]Attorney fees were denied at this hearing, but at a later hearing on December 6, 1993, Singh was awarded attorney fees. See the discussion in footnote 5, *post*.

[3]At various points in the opening brief, appellant Board argues that (1) this case involves only matters of procedure rather than Singh's substantive rights, and (2) the question whether Singh is entitled to a disability retirement involves only a "statutory privilege" rather than any issue involving a vested right. The first point is not correct, as the case involves the substantive validity of the decision appealed from, rather than any "procedural" defect. The second point is quite clearly erroneous, in light of the holding of the *Strumsky* case, cited *supra*. We do not further address either of these issues.

[4]Board argues somewhat confusingly it "conceded below and does concede now that the Trial Court can reweigh the evidence and apply its independent judgment on the probative value of the evidence and thus what the facts of this case are. But if the Board's findings are supported by the weight of evidence there is no abuse of the Board's discretion merely because its decision . . . might be inconsistent with other law."

This appears to be an argument that while the trial court could properly exercise its independent judgment, it was somehow not allowed to disagree with Board's conclusions, in which case the exercise of the "independent judgment" would be an exercise in futility. Further, when counsel argues Board's decision should be upheld if its findings are "supported by the weight of the evidence" it ignores the fact the trial court found that in this case the "weight of the evidence" supported Singh's position rather than that of Board.

superior court, and does it thus mandate reversal of the judgment entered in the trial court reversing Board's decision?[5]

## DISCUSSION

### A. *Introduction*

In the petition for writ of mandate filed in the superior court, Singh argued that Board's determination Singh was not injured in the course of his employment was erroneous. While Singh did not contest the fact that at the time of the accident Singh was en route to work, rather than proceeding to a remote jobsite as a part of his work, Singh argued that because he was on call for emergencies, because he carried County equipment and supplies, and because he would sometimes go from his home to a jobsite, the case law exceptions to the going-and-coming rule applied to his situation. In particular, Singh cited the superior court to the case of *Huntsinger* v. *Glass Containers Corp.* (1972) 22 Cal.App.3d 803, 806 [99 Cal.Rptr. 666], a matter which Singh asserted to be on all fours with his own case.

In response, Board did not argue any factual discrepancy, but rather urged in the superior court, as Board does here, that the enactment of Proposition 162 required the superior court to defer to Board's resolution of the matter.

### B. *Case Law*[6]

In *Smith* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 814, 815 [73 Cal.Rptr. 253, 447 P.2d 365], our Supreme Court reiterated the principle that "[u]nder the well established going and coming rule, an employee does not pursue the course of his employment when he is on his way to or from work." The court noted, however, that "[i]n a number of cases we have established exceptions to this rule . . ." (*id.* at p. 816), and went on to

---

[5]While in its opening brief Board argued both that the grant of mandate and an award of attorney fees should be reversed, as Singh pointed out in the respondent's brief, only the grant of mandate, and not the order awarding attorney fees, was ever appealed by Board. Counsel for Board admits in its reply brief that counsel "is chagrined to acknowledge that Singh is quite correct; a separate appeal of [the attorney fees] order is apparently required . . . ." In light of this concession we do not address the question of the award of attorney fees.

[6]Board argues we should not consider workers' compensation cases in determining an employee's retirement matter. Board is incorrect, as "the County Employees Retirement Act . . . and the Workers' Compensation Act 'are related in subject and harmonious in purpose.' [Citations.] In fact, courts have looked to workers' compensation law precedent for guidance in contending with similar issues in pension law. [Citations.]" (*Bowen* v. *Board of Retirement* (1986) 42 Cal.3d 572, 578, fn. 4 [229 Cal.Rptr. 814, 724 P.2d 500].) There is no reason the going-and-coming rule should be interpreted in one way in one context, and differently in another.

consider whether "we should recognize another exception to the rule . . . : that at the time of the accident [the employee] was engaged in the course of his employment inasmuch as he was bringing his car to work as required by his employer." (*Ibid.*, fn. omitted.)

The court went on to affirm the suggested exception to the going-and-coming rule, holding: "In the instant case the employer clearly benefited from [the employee]'s bringing the car to work. Indeed, an employer must be conclusively presumed to benefit from employee action reasonably directed toward the execution of the employer's orders or requirements. An employer cannot request or accept the benefit of an employee's services and concomitantly contend that he is not 'performing service growing out of and incidental to his employment.' " (*Smith* v. *Workmen's Comp. App. Bd.*, *supra*, 69 Cal.2d at p. 820, fn. omitted.) In summary, the court held that the employee's "obligation reached out beyond the employer's premises, and, in driving his car to and from them, he did no more than fulfill the condition and requirement of his employment." (*Id.* at p. 825.)

In the matter of *State Farm Mut. Auto. Ins. Co.* v. *Haight* (1988) 205 Cal.App.3d 223 [252 Cal.Rptr. 162], this court also exhaustively reviewed the legal background and the cases interpreting the doctrine known as the going-and-coming rule. In that case, an employee had incurred an accident while returning home from a jobsite.[7] We quote extensively from that decision:

"A well-known exception to the going-and-coming rule arises *where the use of the car gives some incidental benefit to the employer*. Thus, the key inquiry is whether there is an incidental benefit derived by the employer. (See *Huntsinger* v. *Glass Containers Corp.*, *supra*, 22 Cal.App.3d at p. 811.) The question is not who owns the vehicle (see *Largey* v. *Intrastate Radiotelephone, Inc.* (1982) 136 Cal.App.3d 660 [186 Cal.Rptr. 520]), or whether the employee receives reimbursement by the employer for the vehicle (see *Richards* v. *Metropolitan Life Ins. Co.* (1941) 19 Cal.2d 236 [120 P.2d 650]), or whether the employee performs a personal errand while driving home. (See *Lazar* v. *Thermal Equipment Co.* [1983] 148 Cal.App.3d 458, 464-466 [195 Cal.Rptr. 890]; *Avila* v. *Standard Oil of California* (1985) 167 Cal.App.3d 441, 448 [213 Cal.Rptr. 314]; *Perez* v. *Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 970 [227 Cal.Rptr. 106, 719 P.2d 676]; *Joseph* v. *Office of Consulate General* (9th Cir. 1987) 830 F.2d 1018, 1025, 1026.)

[7]The employee normally drove his own car on company business, but at the time of the accident had borrowed a company vehicle to use, as his own vehicle was being repaired. (*State Farm Mut. Auto. Ins. Co.* v. *Haight, supra*, 205 Cal.App.3d at p. 228.) For the reasons set out in the cited text, however, this distinction between that case and the present one is not material.

"The evidence is uncontradicted [appellant]'s use of the [] vehicle in his job clearly gave [his employer] an incidental benefit. [The employee] was driving a . . . vehicle with company equipment in [it] and returning to his home from engaging in company activity. [The employee] had duties both in the office and in the field. He was required to use his vehicle to travel to work sites. He delivered materials in his vehicle to the work site. He was required to travel throughout the county . . . . It was an express condition of his employment that [he] use the vehicle in attending to his duties.

"The fact that the accident occurred when [the employee] was on his way home from work is not determinative of the scope of employment. In *Huntsinger* v. *Glass Containers Corp.*, *supra*, 22 Cal.App.3d 803, 810, the court said: ' "The cases . . . indicate that exceptions will be made to the 'going-and-coming' rule where the trip involves an incidental benefit to the employer." ' *Huntsinger* held the employee 'driving his vehicle to and from the office was, therefore, incidentally beneficial to [the employer] in a manner not common to the commute trips by ordinary members of its work force. In other words, when a business enterprise requires an employee to drive to and from its office in order to have his vehicle available for company business during the day, accidents on the way to and from the office are statistically certain to occur eventually, and, the business enterprise having required the driving to and from work, the risk of such accidents are risks incident to the business enterprise.' (*Id.* at p. 810.)" (*State Farm Mut. Auto. Ins. Co.* v. *Haight*, *supra*, 205 Cal.App.3d at pp. 241-242, italics in original.)

■ Thus the superior court correctly applied the law in finding that Singh's injury arose out of the course of his employment, notwithstanding the fact he was on his way to work at the time of the accident, because Singh came fully within the above discussed exception to the going-and-coming rule.[8] Thus Board misapplied the law, and the superior court corrected that misapplication. The remaining question is whether Board is correct in arguing that the superior court, because of the passage of Proposition 162, should have affirmed Board's decision, notwithstanding its misapplication of the law.

## C.   *Analytical Background*

This case involves statutory construction, and our Supreme Court has recently set out the rules we follow: " 'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the

---

[8]Board points out that the superior court termed the matter a "close call." The trial court's characterization of its decision is not relevant in determining its validity.

purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute. [Citations.] But "[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." ' (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420].)" (*People* v. *King* (1993) 5 Cal.4th 59, 69 [19 Cal.Rptr.2d 233, 851 P.2d 27].)

██ Stripped of its many nonessential arguments, Board's position may accurately be summed up thusly: Board's decisions, under the November 1992 constitutional amendment, may not be reviewed by the superior court to determine whether under traditional mandamus principles they are supported by the weight of the evidence, but instead must be upheld unless and until some violation of the United States Constitution or other due process violation appears. As County counsel phrases it on behalf of Board in his closing brief, "Proposition 162 gave the Board authority to make the decision it did, so long as it breached no fiduciary duty in doing so, and notwithstanding any other state law to the contrary."

In other words, Board appears to suggest (without directly stating) that the scope of review under Code of Civil Procedure section 1094.5 was repealed by implication by the passage of Proposition 162. We believe no such repeal, however, occurred.

### D. *Analysis*

The language enacted in November 1992 upon which Board relies is this: "Notwithstanding any other provisions of law or this Constitution to the contrary, the retirement board of a public pension or retirement system shall have plenary authority and fiduciary responsibility for investment of moneys and administration of the system, subject to . . . the following: . . . ." (Cal. Const., art. XVI, 2d par. of § 17.)

(The "following" provisions deal mainly with stating (1) that a retirement board, rather than the Legislature, shall have fiduciary responsibility for operation of a retirement system, and (2) a retirement board's primary duty is to its members.)

As we have stated, Board's claim herein is essentially that the above cited language from Proposition 162, and in particular the use of the word

"plenary,"[9] repeals the established rules by which local agency decisions are reviewed in the superior courts. That is, the use of the word "plenary" with respect to the powers of a retirement board means that, as Board puts it, "the evidence of the case need be considered [by the courts] in these two ways only: to see if the evidence supports the Board's findings of fact; and to see if the decision of the Board offends Federal standards of due process or the Board's fiduciary duty to the Retirement System . . . ."

Necessarily, this is an assertion that Proposition 162 repealed by implication Code of Civil Procedure section 1094.5, subdivision (c), providing that "in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence." That standard was applied by the trial court in its determination of this case.

■ "However, repeals by implication are not favored, and we do not recognize them unless two apparently conflicting laws cannot be harmonized. [Citation.] As we recently reiterated, ' "[s]o strong is the presumption against implied repeals that when a new enactment conflicts with an existing provision '[i]n order for the second law to repeal or supersede the first, the former must constitute a revision of the entire subject, so that the court may say it was intended to be a substitute for the first.' " ' (*Droeger* v. *Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 43 [283 Cal.Rptr. 584, 812 P.2d 931].) ■ We see no evidence of such legislative intent in this case. Rather, the two bodies of law are readily harmonized if we adopt the usual meaning of the words [at issue.]" (*Roberts* v. *City of Palmdale* (1993) 5 Cal.4th 363, 379 [20 Cal.Rptr.2d 330, 853 P.2d 496].)

As our Supreme Court phrased the matter in another case in which it was asserted the jurisdiction of an administrative agency had been altered by a statutory repeal-by-implication, "statutes should be interpreted in such a way as to make them consistent with each other, rather than obviate one another. [Citation.]" (*Nickelsberg* v. *Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 298 [285 Cal.Rptr. 86, 814 P.2d 1328].)

Again, "accepting [appellant's] contention would require us to conclude that the [voters] implicitly repealed [other relevant statutes]. Repeals by implication are disfavored and are recognized only when potentially conflicting statutes cannot be harmonized. [Citation.] Disharmony, however,

---

[9]Board states as a definition of "plenary": "Full, entire, complete, absolute, perfect, unqualified," which definition appears in Black's Law Dictionary (6th ed. 1990) page 1038, column 2. Nothing in this definition, however, necessarily implies that "unreviewable" is a meaning which must be accorded "plenary."

between the provisions of [a new enactment] and those of [other relevant statutes] exists only if one takes—as does [appellant]—an overly broad view of [the matter at issue]." (*Nickelsberg* v. *Workers' Comp. Appeals Bd., supra*, 54 Cal.3d at p. 298.)

In this case Board's reliance upon dictionary definitions of the word "plenary" does not compel us to accept Board's conclusion that the definition of that word indicates the voters' enactment of Proposition 162 was intended by necessary implication to repeal the right of a superior court to review a retirement board's decision for errors, whether of fact or of law.

Simply put, as the ballot arguments advised the voters, the measure before them (a) removed the Legislature's authority to make investment decisions, and (b) established that a system's primary obligation was to its members and beneficiaries. Nothing whatsoever in the history or surrounding circumstances of this enactment suggests that it was intended to abrogate established rules of judicial review,[10] and we will not so hold absent some more compelling rationale than the single word "plenary."

Finally, we should not ascribe to the voters in November 1992 any such intent as Board necessarily implies.[11] In August 1992 the California Senate Office of Research prepared Senate Publication No. 643-S, "Analysis of November 1992 Ballot Propositions" (Analysis). As the seven-page study of Proposition 162 therein makes clear, no alteration in the scope of judicial review of retirement boards was ever at issue in that election.

Instead, as the ballot arguments cited above also indicate, Proposition 162 was "an outcome of California's recent budget difficulties and the struggle to find the financial resources to meet budget shortfalls. . . . Proposition 162 was placed on the ballot by those who opposed AB702, which passed the Legislature and was signed by [Governor] Wilson." (Analysis at p. 18.)

Briefly, the proposition in question was in response to a bill which had permitted the Legislature and the Governor to use reserve funds in a retirement system (in this case, the state Public Employees' Retirement

---

[10]Indeed, even the rebuttal to the ballot argument in favor of Proposition 162 asserted only that the proposition "takes away nearly all authority of the executive and legislative branches to oversee pension board decisions." (Analysis by the Legislative Analyst, Ballot Pamp., Rebuttal to Argument in Favor of Prop. 162, Gen. Elec. (Nov. 3, 1992) p. 38.) Nowhere is any limitation on *judicial* review of *erroneous* decisions implicated.

[11]Board argues we should not resort to determining the intent of the electorate in enacting Proposition 162, because the enacted language is clear. Board's proposed meaning to be ascribed to the use of the word "plenary" is, however, far from clear, and thus resort to other sources to determine legislative intent is not only proper, but necessary.

System, or PERS) "to substitute for normal state payments required to fund the system—thereby freeing state money to help close the budget shortfall." (Analysis at p. 18.) (Assembly Bill No. 702 also transferred PERS actuarial functions to the Governor by giving him the power to appoint the PERS actuary.)

The substitution of reserve account funds for state payments and the transfer of actuarial oversight powers away from PERS were "viewed by opponents as unwise and unfair, and many called it one more 'raid' on the pension system." (Analysis at p. 18.) Proposition 162 was thus intended by its proponents to insulate the administration of retirement systems from oversight and control by legislative and executive authorities, and also return control of the actuarial function to the retirement boards themselves. This "increased level of independence would make the [retirement] systems less of a target for local and state officials looking for a way to balance a budget." (Analysis at p. 20.)

Nowhere in any of the materials either analyzing or arguing in favor of or against Proposition 162 is there the slightest hint that judicial review of the decisions of a retirement board was at issue. Clearly, the word "plenary" was intended to mean that retirement boards would have the sole and complete power to invest their funds and to administer their systems, as opposed to being subject to direction from state and local legislative and executive bodies in these matters.

This reading of the provisions of California Constitution, article XVI, section 17, accords with the "usual meaning of the words" at issue (*Roberts* v. *City of Palmdale, supra,* 5 Cal.4th at p. 379), rather than the strained and *un*usual interpretation of the words urged by Board. Because Board's argument is unsound and unsupported by applicable authority, we reject it, and hold that the established procedures for judicial review of retirement board decisions were unaffected by the passage of Proposition 162.

### E. *Summary*

It is *possible* to read California Constitution, article XVI, section 17 to include a direction to immunize the decision of a retirement board from judicial review, but such a reading of the statute would lead, as we have seen, to absurd results. As noted earlier, the " ' "language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." ' . . ." (*Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014], citations omitted.) "The intent prevails over the letter, and the letter will, if

possible, be so read as to conform to the spirit of the act." (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) The "spirit of the act" in this case having nothing whatsoever to do with any alteration of the well-established standards for judicial review of local agency decisions, we reject Board's contrary argument.

## DISPOSITION

The judgment is affirmed. Respondent to recover costs on appeal, including reasonable attorney fees to be determined by the trial court.

Kremer, P. J., and Huffman, J., concurred.

A petition for a rehearing was denied February 5, 1996.