BILL LOCKYER Attorney General SUSAN DUNCAN LEE Deputy Attorney General
THE HONORABLE JEROME E. HORTON, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
May a city charter require that the board of retirement of a city's employee pension system (1) place the cost of the past service liability associated with a new retirement benefit on a specified amortization schedule and (2) place the cost associated with net accumulated actuarial gains and losses on a time specific amortization schedule?
 CONCLUSION
A city charter may not require that the board of retirement of a city's employee pension system (1) place the cost of the past service liability associated with a new retirement benefit on a specified amortization schedule or (2) place the cost associated with net accumulated actuarial gains and losses on a time specific amortization schedule.
 ANALYSIS
The Constitution allows a city to adopt a charter for its own governance. (Cal. Const., art. XI, § 3, subd. (a).) Section 5 of article XI of the Constitution specifies what a city charter may contain:
 "(a) It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith.
 "(b) It shall be competent in all city charters to provide, in addition to those provisions allowable by this Constitution, and by the laws of the State for: (1) the constitution, regulation, and government of the city police force (2) subgovernment in all or part of a city (3) conduct of city elections and (4) plenary authority is hereby granted, subject only to the restrictions of this article, to provide therein or by amendment thereto, the manner in which, the method by which, the times at which, and the terms for which the several municipal officers and employees whose compensation is paid by the city shall be elected or appointed, and for their removal, and for their compensation, and for the number of deputies, clerks and other employees that each shall have, and for the compensation, method of appointment, qualifications, tenure of office and removal of such deputies, clerks and other employees."
Accordingly, charter cities enjoy "autonomous rule over municipal affairs pursuant to article XI, section 5 of the California Constitution, `subject only to conflicting provisions in the federal and state Constitutions and to preemptive state law.' [Citations.]" (Associated Builders Contractors, Inc. v. SanFrancisco Airports Com. (1999) 21 Cal.4th 352, 363; see HomeGardens Sanitary Dist. v. City of Corona (2002)96 Cal.App.4th 87, 93; 85 Ops.Cal.Atty.Gen. 211, 213-214 (2002).)
We are asked whether under the grant of authority contained in article XI of the Constitution, a city charter may require that the board of retirement of a city's employee pension system place certain costs on specified amortization schedules. We conclude that the charter may not so provide because to do so would conflict with another provision of the Constitution.
Section 17 of article XVI of the Constitution is the governing provision with which we are concerned. It provides boards of retirement of public pension systems with "sole and exclusive power to provide for actuarial services":
". . . . . . . . . . . . . . . . . . . . . . . . . .
 "Notwithstanding any other provisions of law or this Constitution to the contrary, the retirement board of a public pension or retirement system shall have plenary authority and fiduciary responsibility for investment of the moneys and administration of the system, subject to all of the following:
 "(a) The retirement board of a public pension or retirement system shall have the sole and exclusive fiduciary responsibility over the assets of the public pension or retirement system. . . .
". . . . . . . . . . . . . . . . . . . . . . . . . .
 "(e) The retirement board of a public pension or retirement system, consistent with the exclusive fiduciary responsibilities vested in it, shall have the sole and exclusive power to provide for actuarial services in order to assure the competency of the assets of the public pension or retirement system.
". . . . . . . . . . . . . . . . . . . . . . . . . .
 "(h) As used in this section, the term `retirement board' . . . shall not be interpreted to mean or include . . . the elected legislative body of a jurisdiction which employs participants in a public employees' pension or retirement system."
Before examining this constitutional provision in detail, we note preliminarily that the Legislature has long provided for the establishment of retirement systems for city employees. (Gov. Code, §§ 45300-45345.)[1] A retirement system established by a city for the benefit of its employees is a "public pension or retirement system" within the meaning of Article XVI of the Constitution. (See 86 Ops.Cal.Atty.Gen. 86, 88 (2003).)
Once established, a public pension system operates essentially as a trust, to which current employee members and the pension plan sponsor (here, the city) make annual contributions. Contributions are made in amounts actuarially calculated to maintain the trust fund at a level sufficient to pay the benefits that have been promised to past and present employee members. Section 45342 provides:
 "Any pension or retirement system adopted shall be on a sound actuarial basis and provide for contributions by both the city and the employee members of the system which shall be based on percentages of pay roll to be changed only by adjustments on account of experience under the system.
 "Contributions shall be in amounts which will accumulate at retirement a fund sufficient to carry out the promise to pay benefits to the individual on account of his service as a member of the system, without further contributions from any source."
In practice, the actuarial valuation of a fund is an ongoing endeavor, requiring complex assumptions about a number of variables, as well as regular corrections based on actual experience. (See, e.g., In re Retirement Cases (2003)110 Cal.App.4th 426, 457-460.) One reason why actual experience may not match actuarial assumptions is a change in the level of employee benefits. For example, a city may grant improved benefits retroactively to its existing employees as an element of enhanced compensation. A retroactive improvement in retirement benefits not only requires an increase in the city's future retirement contributions, but also creates a "past service liability," or debt to the retirement fund, which must be paid.
Another reason why actual experience may not match actuarial assumptions is that assumptions are imperfect. This may occur for any number of reasons including fluctuations in market performance, unexpected rates of employee turnover, and unforeseen increases in salary or in purchases of service credits. When the retirement fund experiences such "net accumulated actuarial gains and losses," contributions must be adjusted to compensate for the difference.
A common approach to such deviations is to amortize changes in contribution rates over a number of years. (In re RetirementCases, supra, 110 Cal.App.4th at p. 460.) The number of years may vary; the longer the amortization period, the more slowly money will flow into the retirement fund from which to pay benefits or earn income. The length of an amortization period may therefore have a significant effect upon the actuarial soundness of a retirement system. (See, e.g., Board of Administration v.Wilson (1997) 52 Cal.App.4th 1109, 1140, 1150-1151; UnitedFirefighters of Los Angeles City v. City of Los Angeles (1989)210 Cal.App.3d 1095, 1112.)
Returning to articles XI and XVI of the Constitution, we find that section 17 of the latter article contains the phrase "[n]otwithstanding any other provisions of law or this Constitution to the contrary. . . ." As a result of this phrase, any conflict between articles XI and XVI must be resolved in favor of article XVI. (See McClatchy Newspapers v. SuperiorCourt (1988) 44 Cal.3d 1162, 1182; Klajic v. Castic Lake WaterAgency (2004) 121 Cal.App.4th 5, 13; Souvannarath v. Hadden
(2002) 95 Cal.App.4th 1115, 1125-1126; 79 Ops.Cal.Atty.Gen. 28, 33 (1996).)
Here, subdivision (e) of section 17 of article XVI of the Constitution is the controlling provision:
 "The retirement board of a public pension or retirement system, consistent with the exclusive fiduciary responsibilities vested in it, shall have the sole and exclusive power to provide for actuarial services in order to assure the competency of the assets of the public pension or retirement system."
"Actuarial services" include not only the determination of the necessary amounts of contributions but also the scheduling of the payments when a required contribution rate is amortized in order to guarantee the sufficiency of the system's assets over a period of time. No room is provided in the Constitution for a city charter to require that a city's board of retirement adhere to a specified amortization schedule in providing its actuarial services. Such a mandate in the city charter would directly undermine a board's "sole and exclusive power to provide for actuarial services."
In Singh v. Board of Retirement (1996) 41 Cal.App.4th 1180, the court analyzed the reasons the electorate adopted the "actuarial services" provision of the Constitution. It looked to Senate Publication No. 643-S, "Analysis of November 1992 Ballot Propositions," prepared by California Senate Office of Research, to determine the voters' intent in giving boards of retirement "sole and exclusive power to provide for actuarial services" when the voters approved this constitutional language at the November 3, 1992 General Election:
 "In the election on November 3, 1992, the voters of the state of California enacted Proposition 162, known as `The California Pension Protection Act of 1992.' The enactment amended the second paragraph of section 17 of article XVI of the California Constitution to state: `Notwithstanding any other provisions of law or this Constitution to the contrary the retirement board of a public pension or retirement system shall have plenary authority and fiduciary responsibility for investment of moneys and administration of the system, subject to . . . the following:. . . .'
". . . . . . . . . . . . . . . . . . . . . . . . . .
 "Briefly the proposition in question was in response to a bill which had permitted the Legislature and the Governor to use reserve funds in a retirement system (in this case, the state Public Employees' Retirement System, or PERS) `to substitute for normal state payments required to fund the system-thereby freeing money to help close the budget shortfall.' (Analysis at p. 18.) (Assembly Bill No. 702 also transferred PERS actuarial functions to the Governor by giving him the power to appoint the PERS actuary.
 "The substitution of reserve account funds for state payments and the transfer of actuarial oversight powers away from PERS were `viewed by opponents as unwise and unfair, and many called it one more `raid' on the pension system.' (Analysis at p. 18.) Proposition 162 was thus intended by its proponents to insulate the administration of retirement systems from oversight and control by legislative and executive authorities, and also return control of the actuarial function to the retirement boards themselves. This `increased level of independence would make the [retirement] systems less of a target for local and state officials looking for a way to balance a budget.' (Analysis at p. 20.)" (Id. at pp. 1183, 1191, 1192.)
More recently, in Westly v. Board of Administration (2003)105 Cal.App.4th 1095, the court looked at the ballot pamphlet for the November 3, 1992 General Election to determine the voters' intent in giving boards of retirement "sole and exclusive power to provide for actuarial services":
 "The Legislative Analyst gives . . . attention to the issue of a retirement board's administrative authority under Article XVI, section 17. It recognizes that prior to Article XVI, section 17, the Constitution specified the general authority of the Board over public pension systems and that within these limits the Legislature could change the administrative functions of public pension systems. Two examples which are given are legislation removing the actuarial function from the Board and placing it under a state actuary appointed by the Governor and confirmed by the Legislature, and legislation allowing the use of CalPERS assets to offset employer contribution costs. . . .
 "The analyst also states that Article XVI, section 17 would give `the board of each public pension system complete authority for administration of the system's assets and for the actuarial function.' (Ballot Pamp., Gen. Elec., supra, Analysis by the Legislative Analyst, p. 37, italics added.). . . .
 "Thus, the voter intent, evidenced by the published ballot materials, is that Article XVI, section 17 would give the Board the authority to administer the investments, payments, and other services of CalPERS. . . ." (Id. at pp. 1111-1112.)
The principles of construction to be applied in interpreting a constitutional provision are well settled. As stated by the court in Thompson v. Department of Corrections (2001) 25 Cal.4th 117,122: "In interpreting a constitution's provision, our paramount task is to ascertain the intent of those who enacted it. [Citation.]" In determining the voters' intent, we "look first to the language of the constitutional text, giving the words their ordinary meaning." (Leone v. Medical Board (2000)22 Cal.4th 660, 665.) "[T]he words used should be accorded the ordinary and usual meaning given them among people by whose vote they were adopted [citation]. . . ." (Flood v. Riggs (1978)80 Cal.App.3d 138, 152.) Where a term is not further defined in the constitutional provision, "it can be assumed to refer not to any special term of art, but rather to a meaning that would be commonly understood by the electorate." (People ex rel. Lungrenv. Superior Court (1996) 14 Cal.4th 294, 392.) If the language is clear, there is no need for construction. (Delaney v.Superior Court (1990) 50 Cal.3d 785, 798.) However, "when . . . the enactment follows voter approval, the ballot summary and arguments and analysis presented to the electorate in connection with a particular measure may be helpful in determining the probable meaning of uncertain language." (Amador Valley JointUnion High Sch. Dist. v. State Bd. of Equalization (1978)22 Cal.3d 208, 245-246; accord, (People v. Birkett (1999)21 Cal.4th 226, 243.) People ex rel. Lungren v. Superior Court,supra, 14 Cal.4th at p. 306.)
Here, the Constitution gives to a board of retirement of a public pension system "sole and exclusive power to provide for actuarial services." The meaning is clear from the language used. As indicated in Singh v. Board of Retirement, supra,41 Cal.App.4th 1180, and Westly v. Board of Administration,supra, 105 Cal.App.4th 1095, the purposes to be served in adopting the language fully support the plain meaning of "sole and exclusive." The actuarial services provided by a board of retirement with respect to placing certain costs on specified amortization schedules are not subject to manipulation, directive, or control by a city charter.
We conclude that a city charter may not require that the board of retirement of a city's employee pension system (1) place the cost of the past service liability associated with a new retirement benefit on a specified amortization schedule or (2) place the cost associated with net accumulated actuarial gains and losses on a time specific amortization schedule.
[1] All references hereafter to the Government Code are by section number only.