Filed 10/13/15; pub. order 11/12/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF JUSTICE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>BOARD OF ADMINISTRATION OF CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM,<br><br>    Defendant and Respondent;<br><br>ANGELITA RESENDEZ,<br><br>    Real Party in Interest and Respondent. | B257492<br><br>(Los Angeles County Super. Ct. Nos. BS140587, BS143783 & BS144033) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Kamala D. Harris, Attorney General, Alicia M.B. Flowler, Senior Assistant Attorney General, Peter Halloran, Senior Assistant Attorney General, Celine M. Cooper, Supervising Deputy Attorney General, Simerdip Khangura, Deputy Attorney General, Leah C. Gershon, Deputy Attorney General, for Plaintiff and Appellant.

California Public Employees' Retirement System, Matthew G. Jacobs, Rory J. Coffey, for Defendant and Respondent.

California Statewide Law Enforcement Assn., Kasey Christopher Clark, James A. Vitko, Erin L. Eckelman, for Real Party in Interest and Respondent.

_____

Appellant California Department of Justice (DOJ) appeals from a judgment in favor of respondents Angelita Resendez and Board of Administration of California Public Employees' Retirement System (CalPERS) in this action concerning reinstatement to a peace officer position following disability retirement.[1]  On appeal, it is undisputed that Resendez is no longer incapacitated for duty based on the orthopedic condition that led to her disability retirement.  DOJ contends:  (1) in determining whether Resendez was still physically or mentally incapacitated for duty, CalPERS should have verified Resendez was not suffering from any other condition that would prevent her from meeting the minimum standards for peace officers set forth in Government Code section 1031[2]; (2) DOJ does not have a mandatory duty under section 21193 to reinstate an employee that CalPERS determines is no longer incapacitated; and (3) DOJ may condition an offer of reinstatement under section 21193 on compliance with the standards of section 1031.  We conclude CalPERS properly made its reinstatement determination based on the condition for which Resendez received disability retirement, DOJ has a mandatory duty to reinstate Resendez after CalPERS concludes she is no longer incapacitated, and DOJ may not require Resendez to comply with conditions prior to reinstatement.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

DOJ employed Resendez as a Special Agent Supervisor (SAS).  She received industrial disability retirement in December 2008, for a spine condition as a result of several injuries sustained on the job.  In September 2009, Resendez applied to CalPERS for reinstatement.  On February 25, 2010, based on an orthopedic evaluation, CalPERS informed her that she was eligible for reinstatement.  On March 6, 2010, DOJ offered to

---

[1] State Personnel Board (SPB) was also a respondent in the trial court, but has not filed a brief on appeal, and therefore, is not a party on appeal.

[2] All further statutory references are to the Government Code, unless otherwise stated.

employ Resendez on the condition that she completes medical and psychological evaluations and a background investigation. Resendez rejected DOJ's offer.

On March 8, 2010, DOJ filed an appeal from CalPERS' decision to grant Resendez reinstatement. After hearing dates in March and August 2012, the Office of Administrative Hearing (OAH) denied the appeal. On December 16, 2012, CalPERS adopted the OAH decision.

Resendez filed a constructive medical termination/suspension appeal with State Personnel Board (SPB) alleging that she was entitled to unconditional reemployment with DOJ based on CalPERS's reinstatement decision. A hearing was held before an Administrative Law Judge (ALJ). In February 2013, the ALJ issued a proposed decision in favor of Resendez. The SPB adopted the proposed decision and ordered DOJ to reemploy Resendez in a SAS position without conditions. The SPB awarded back pay to Resendez from December 16, 2012.

DOJ filed a petition for a writ of administrative mandamus from the CalPERS's decision. DOJ also filed a petition challenging the SPB decision. Resendez filed a petition arguing that back pay should be calculated from February 25, 2010, when CalPERS granted her request for reinstatement. The trial court ordered the petitions consolidated. A hearing was held on March 18, 2014. The court requested supplemental briefing on the legislative history of section 21193, which the parties submitted.

On May 6, 2014, the trial court denied the DOJ's petitions and granted Resendez's back pay petition. The court found: (1) CalPERS was only required to review whether the orthopedic disability existed in determining whether Resendez remained incapacitated under section 21191 and did not have to consider the standards under section 1031; (2) reemployment was mandatory, because DOJ has no discretion to offer employment under section 21193 and DOJ could not condition reemployment on compliance with section 1031; and (3) Resendez is entitled to back pay and benefits from February 25, 2010. Judgment was entered on May 30, 2014.

3

## DISCUSSION

### Standard of Review

Retirement benefits and reinstatement rights are fundamental vested rights. (*Roccaforte v. City of San Diego* (1979) 89 Cal.App.3d 877, 886.) When an administrative decision substantially affects fundamental vested rights, the trial court applies its independent judgment to the evidence. (*Id.* at pp. 885-886.) "On appeal, we 'need only review the record to determine whether the *trial court's* findings are supported by substantial evidence.' [Citations.] As to questions of law, we review those determinations de novo, although we give great weight to CalPERS's construction of California's Public Employees' Retirement Law (PERL) (Gov. Code, § 20000 et seq.). [Citations.] If, however, there is 'any ambiguity or uncertainty in the meaning of [the Public Employees' Retirement System] legislation [it] is to be liberally construed in favor of the public employee, as long as such construction is consistent with the clear language and purpose of the statute.' [Citation.]" (*Beckley v. Board of Administration of California Public Employees' Retirement System* (2013) 222 Cal.App.4th 691, 697 (*Beckley*), fn. omitted.)

"The rules governing statutory construction are well settled. We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] To determine legislative intent, we turn first to the words of the statute, giving them their usual and ordinary meaning. [Citations.] When the language of a statute is clear, we need go no further. However, when the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]" (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340.)

**Statutory Scheme**

CalPERS manages retirement benefits for public employees under the provisions of the PERL. (§ 20000 et seq.) The purpose of the PERL "is to effect economy and efficiency in the public service by providing a means whereby employees who become superannuated or otherwise incapacitated may, without hardship or prejudice, be replaced by more capable employees, and to that end provide a retirement system consisting of retirement compensation and death benefits." (§ 20001.)

Certain employees, including state peace officers, who are "incapacitated for the performance of duty as a result of an industrial disability," are eligible for special disability retirement benefits regardless of age or length of service. (§ 21151, subd. (a).) "'Disability' and 'incapacity for performance of duty' as a basis of retirement, mean disability of permanent or extended and uncertain duration, as determined by the board, . . . on the basis of competent medical opinion." (§ 20026.) In this context, "industrial" means "arising out of and in the course of his or her employment." (§ 20046.)

In *Beckley, supra*, 222 Cal.App.4th at pages 694-695, a California Highway Patrol (CHP) officer suffered a disability on the job and was sent home on leave because he could not perform the 14 critical tasks required of all CHP officers at any time. CalPERS denied the officer's application for industrial disability retirement because he could perform the usual duties of his most recent position as a public affairs officer, which rarely included any of the 14 critical tasks. (*Id.* at p. 696.) The *Beckley* court found CalPERS was required to evaluate the officer's ability to perform the usual duties of a CHP officer, including the 14 critical tasks, not simply the duties of his most recent position. (*Id.* at pp. 700-701.) The court noted that "the 'usual duties' of every CHP officer include, by legislative mandate, the ability to carry out all tasks necessary for the preservation of life and property, but that an officer's *inability* to accomplish those tasks does not require a finding that the officer sustained an *industrial* disability (cf. §§ 21150 & 21151), or that his incapacity is 'of permanent or extended and uncertain duration' (§ 20026), or that the officer meets any other proper requirements for entitlement to

5

industrial disability retirement. These matters are for CalPERS to decide." (*Id.* at p. 701.)

State safety members who receive disability retirement can apply for reinstatement when they are no longer mentally or physically incapacitated for duty. (§ 21191.) The state is obligated to reinstate employees who received disability retirement, but have recovered, in accordance with the provisions of section 21193.

## Minimum Standards for Peace Officers under Government Code Section 1031

DOJ contends that in order to determine whether Resendez was still incapacitated from her usual duties as a peace officer, CalPERS had to evaluate whether Resendez met the minimum standards for peace officers set forth in section 1031. DOJ does not dispute that Resendez is free of her original disabling condition, but contends CalPERS should have determined whether Resendez suffered from any other physical, emotional or mental condition that might adversely affect the exercise of her powers as a peace officer. We disagree.

Under the provisions of section 21192, when a recipient of disability retirement applies for reinstatement, the board causes a medical examination to be conducted by a physician or surgeon appointed by the board. [3] The board must determine, based on the

[3] Section 21192 provides, in pertinent part: "The board . . . may require any recipient of a disability retirement allowance under the minimum age for voluntary retirement for service applicable to members of his or her class to undergo medical examination, and upon his or her application for reinstatement, shall cause a medical examination to be made of the recipient who is at least six months less than the age of compulsory retirement for service applicable to members of the class or category in which it is proposed to employ him or her. The board . . . shall also cause the examination to be made upon application for reinstatement to the position held at retirement or any position in the same class, of a person who was incapacitated for performance of duty in the position at the time of a prior reinstatement to another position. The examination shall be made by a physician or surgeon, appointed by the board or the governing body of the employer, at the place of residence of the recipient or other place mutually agreed upon. Upon the basis of the examination, the board or the

medical examination, "whether he or she is still incapacitated, physically or mentally, for duty in the state agency . . . where he or she was employed and in the position held by him or her when retired for disability, or in a position in the same classification, and for the duties of the position with regard to which he or she has applied for reinstatement from retirement." (§ 21192.)

"Government Code section 1031 sets forth certain minimum standards for each class of employees declared by law to be peace officers." (*Hulings v. State Dept. of Health Care Services* (2008) 159 Cal.App.4th 1114, 1121 (*Hulings*).) The standards are incorporated into every peace officer's job description and must be maintained throughout a peace officer's career. (*Sager* v. *County of Yuba* (2007) 156 Cal.App.4th 1049, 1058-1059.) The standards under section 1031 include being "free from any physical, emotional, or mental condition that might adversely affect the exercise of the powers of a peace officer." (§ 1031, subd. (f).) Physical condition is evaluated by a licensed physician and surgeon. "[M]ental and emotional condition is . . . evaluated by a psychiatrist or psychologist with five years[] experience in the diagnosis and treatment of emotional and physical disorders, and who has met education and training procedures set forth by the California Commission on Peace Officer Standards and Training [POST] designed for the conduct of preemployment psychological screening of peace officers. (Gov. Code, § 1031, subd. (f)(2).)" (*White v. County of Los Angeles* (2014) 225 Cal.App.4th 690, 706 (*White*).)

Under section 21192, the board was authorized to evaluate whether Resendez was "still incapacitated, physically or mentally, for duty" based on a medical examination. The board found she was no longer incapacitated as a result of the disability for which

---

governing body shall determine whether he or she is still incapacitated, physically or mentally, for duty in the state agency, the university, or contracting agency, where he or she was employed and in the position held by him or her when retired for disability, or in a position in the same classification, and for the duties of the position with regard to which he or she has applied for reinstatement from retirement." (§ 21192.)

she had been retired. The term "still incapacitated" suggests the scope of the board's evaluation is limited to determining whether the conditions for which disability retirement was granted continue to exist. The statute does not provide the board with authority to identify new physical, mental, or emotional conditions which might adversely affect the exercise of her duties. It makes sense that the board's review is limited to the condition which rendered retirement necessary, because newly discovered conditions might not have been sustained on the job or meet the requirements for industrial disability retirement.

**Mandatory Reemployment Offer**

DOJ contends section 21193 required two steps before Resendez could be taken off industrial disability retirement: a determination by CalPERS that she was no longer incapacitated for duty and an offer of employment by DOJ. We conclude that an offer to reinstate Resendez was mandatory under section 21193.

Section 21193 provides in pertinent part: "If the determination pursuant to Section 21192 is that the recipient is not so incapacitated for duty in the position held when retired for disability or in a position in the same classification . . . and his or her employer offers to reinstate that employee, his or her disability retirement allowance shall be canceled immediately, and he or she shall become a member of this system. [¶] If the recipient was an employee of the state or of the university and is so determined to be not incapacitated for duty in the position held when retired for disability or in a position in the same class, he or she shall be reinstated, at his or her option, to that position . . . . [¶] If the recipient was an employee of a contracting agency other than a local safety member, with the exception of a school safety member, the board shall notify it that his or her disability has terminated and that he or she is eligible for reinstatement to duty. The fact that he or she was retired for disability does not prejudice any right to reinstatement to duty which he or she may claim." (§ 21193.)

8

The first paragraph of section 21193 suggests there is a two-step process for reinstatement, but when read in context with the second paragraph, it is clear that a state employee who is not incapacitated for duty must be reinstated. An offer to reinstate the employee is mandatory under those circumstances. DOJ was required to offer to reinstate Resendez after CalPERS determined that she was no longer incapacitated for duty.

**Reinstatement Without Conditions**

DOJ contends that it was entitled to condition Resendez's reinstatement on medical and psychological evaluations, as well as an updated background investigation. This is incorrect.

As discussed above, section 21193 requires reinstatement when a recipient of disability retirement is no longer incapacitated by the condition for which she was retired. Mandatory reinstatement, by itself, does not require medical and psychological evaluations or a new background investigation. Placing conditions on Resendez prior to reinstatement would be contrary to the mandatory reinstatement provisions of section 21193. The provisions of the PERL are designed to cover employees under the retirement system or through the employer.

In *Hulings*, *supra,* 159 Cal.App.4th at pages 1118-1119, a peace officer with the Department of Health Services (DHS) accepted a lateral transfer to another agency, but was rejected during the probationary period. He exercised a right of mandatory reinstatement to his former position under a different provision of the Government Code than the one at issue in this case, section 19140.5. (*Ibid*.) DHS required the officer to complete a new background investigation pursuant to section 1031, but the *Hulings* court held mandatory reinstatement under section 19140.5 by itself could not trigger the requirement of a background investigation under section 1031. (*Id.* at p. 1124.) The court concluded that requiring a new background investigation would be contrary to the mandatory reinstatement provisions of section 19140.5. (*Ibid*.) "[A]n employee reinstated under the mandatory provision is to be treated like any other current employee;

9

he can be terminated, demoted or transferred for failure to meet the requirements for continuing employment. (Gov. Code, § 19585, subd. (b).)" (*Id.* at p. 1125.) The appointing power still has authority to ensure peace officers are fit for duty and meet the standards required under section 1031, but nothing in the statutory scheme permits the employer to condition reinstatement on a new background investigation under section 1031. (*Ibid.*)

In *White, supra,* 225 Cal.App.4th 690, the appellate court examined a similar issue that arose when an employee returned from leave under the Family and Medical Leave Act of 1993 (FMLA) (29 U.S.C. § 2601 et seq.). The court noted that an employee who takes leave under the FMLA "is entitled to be restored to employment upon certification from the employee's health care provider that the employee is able to resume work. The employer is not permitted to seek a second opinion regarding the employee's fitness for work prior to restoring the employee to employment." (*White, supra,* at pp. 693-694.) "While a peace officer's health care provider may certify her as fit to return to work under the FMLA, that is no guarantee that the employee's health care provider meets the requirements of Government Code section 1031, in order to properly evaluate the peace officer's mental and emotional health requirements under that statute." (*Id.* at p. 706, fn. omitted.) The *White* court held that if the employer is not satisfied with the employee's health care provider's certification, the employer must restore the employee to work under the FMLA and then seek its own evaluation of the employee's fitness for duty at its own expense. (*Id.* at pp. 694, 705-706.)

Similarly in this case, DOJ must reinstate Resendez, then pursue an evaluation of her fitness for duty as a result of any other conditions and an updated background investigation under its usual procedures.[4]

---

[4] We express no opinion on the procedure for reinstatement of an employee who is known to have a potentially disqualifying condition other than the condition for which the employee was granted industrial disability retirement.

10

## DISPOSITION

The judgment is affirmed.  Respondents Angelita Resendez and Board of Administration of California Public Employees' Retirement System are awarded their costs on appeal.

KRIEGLER, J.

We concur:

MOSK, Acting P. J.

KIRSCHNER, J.[*]

_____

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| CALIFORNIA DEPARTMENT OF JUSTICE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>BOARD OF ADMINISTRATION OF CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM,<br><br>    Defendant and Respondent;<br><br>ANGELITA RESENDEZ,<br><br>    Real Party in Interest and Respondent. | B257492<br><br>(Los Angeles County Super. Ct. Nos. BS140587, BS143783 & BS144033)<br><br><br>**ORDER CERTIFYING OPINION FOR PUBLICATION** |


THE COURT:

The opinion in the above-entitled matter filed on October 13, 2015, is ordered published in the Official Reports pursuant to California Rules of Court, rule 8.1105(b).

_____

        KRIEGLER, J.              MOSK, Acting P. J.              KIRSCHNER, J.*


_____

    * Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.