Filed 4/4/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LINDA C. MARTINEZ et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>PUBLIC EMPLOYEES' RETIREMENT SYSTEM,<br><br>        Defendant and Respondent. | A153679<br><br>(Alameda County<br>Super. Ct. No. RG17846238) |

Government Code[1] section 21156, part of the Public Employees Retirement Law, has always equated disability with a state employee being "incapacitated physically or mentally for the performance of his or her duties." And ordinarily, a governmental employee loses the right to claim disability benefits if terminated for cause. A pair of decisions from the Third Appellate District carved out three exceptions to this general rule. First, under *Haywood v. American River Protection Dist.* (1998) 67 Cal.App.4th 1292 (*Haywood*), a terminated-for-cause employee can still qualify for disability retirement when the conduct which prompted the termination was the result of the employee's disability. Second, under *Smith v. City of Napa* (2004) 120 Cal.App.4th 194 (*Smith*), a terminated employee may qualify for disability retirement if he or she had a "matured right" to a disability retirement prior to the conduct which prompted the termination. Third, *Smith* further recognized that there might be instances where "a

---

[1] Statutory references are to this code unless otherwise indicated.

court, applying principles of equity, will deem an employee's right to a disability retirement to be matured and thus survive a dismissal for cause." (*Id*. at pp. 206–207.)

Applying *Haywood* and *Smith*, the Board of Administration of the California Public Employees Retirement System (CalPERS) adopted a precedential decision[2] that, when an employee settles a pending termination for cause and agrees not to seek re-employment, this is "tantamount to a dismissal," thus precluding a disability retirement. (*In the Matter of Application for Disability Retirement of Vandergoot* (2013) CalPERS Precedential Dec. No. 12–01 (*Vandergoot*).)

Linda Martinez, a former state employee, settled the termination for cause action against her, and agreed to resign and not re-apply for employment with the agency she was leaving. Her application for disability retirement was denied by the CalPERS Board of Administration (Board). Joined by her union, the Service Employees International Union, Local 1000 (SEIU), Martinez challenged the soundness and continued validity of *Haywood* and *Smith*, particularly as extended in *Vandergoot*. Her challenge failed during her administrative appeal, and was rejected by the trial court that denied her petition for mandate relief, which concluded that *Haywood* and *Smith* "set out the relevant law" and were binding as stare decisis. The trial court further concluded that "*Vandergoot* is a reasonable extension of *Haywood* and *Smith*," and, moreover, was entitled to "substantial weight" due to "the agency's area of expertise." We agree with both of these conclusions, and in doing so we reject the contention of Martinez and SEIU that a 2008 enactment tacitly "superseded" *Haywood* and *Smith*.

## BACKGROUND

The salient details are without dispute.

Martinez began work for the State in 1985. In 2001, she commenced working at the State Department of Social Services (DSS); she also served in various positions with

---

[2] A state agency "may designate as a precedent decision a decision or part of a decision that contains a significant legal or policy determination of general application that is likely to recur." (§ 11425.60, subd. (b).)

2

SEIU, eventually becoming Secretary-Treasurer of the regional District Labor Council. In 2014, DSS moved to terminate her employment with a Notice of Adverse Action (NOAA), citing numerous grounds for her dismissal.[3] Believing this action "was taken in retaliation for her union activities," and having already filed an unfair labor practices complaint, Martinez prepared to contest the dismissal.

In September 2014, the parties negotiated a settlement, under which DSS agreed to pay Martinez $30,000, withdraw the NOAA, and remove certain matters from her personnel file. Martinez agreed to "voluntarily resign from her position . . . effective at the close of business on September 30, 2014. [DSS] hereby accepts Martinez's voluntary resignation as of the day of the execution of this settlement agreement [September 22, 2014]." Martinez agreed "she will never again apply for or accept any employment position" with DSS, which "agree[d] to cooperate with any application for disability retirement filed by Martinez within the next six months."

Martinez duly filed her disability retirement application, claiming she could no longer function as a "disability eval[uation] analyst" because of various job-related conditions. In June 2015 CalPERS notified her "Your application has been cancelled." Citing *Haywood*, *Smith*, and *Vandergoot*, CalPERS explained: "We have determined that you were dismissed from employment for reasons which were not the result of a disabling medical condition. Additionally, the dismissal does not appear to be for the purpose of preventing a claim for disability retirement. Therefore, you are not eligible for disability retirement."

Martinez appealed the denial to the Board. Her appeal was heard by an Administrative Law Judge, who concluded "the decision made by CalPERS to cancel

---

[3] In the NOAA, Martinez was advised: "This action is being taken against you for those causes specified in the following subsections of Government Code section 19572: [¶] (b) Incompetence; [¶] (c) Inefficiency; [¶] (d) Inexcusable neglect of duty; [¶] (e) Insubordination; [¶] (f) Dishonesty; [¶] (m) Discourteous treatment of the public and other employees; [¶] (o) Willful disobedience; [¶] (p) Misuse of state property; [¶] (s) Violation of prohibitions in accordance with Section 19990; [¶] (t) Other failure of good behavior, et al.; [¶] (x) Unlawful retaliation."

[Martinez's] application for disability retirement was correct." The Board adopted the Administrative Law Judge's proposed decision, and denied Martinez's petition for reconsideration.

Martinez and SEIU filed a petition against CalPERS, its Board, and DSS (named as "real party in interest") for a writ of mandate (both traditional and administrative) ordering the Board to "set aside and reverse" its decision. Reiterating the position they took before the Board, Martinez and SEIU sought to have the trial court "overrule" *Vandergoot* and "disavow" *Haywood* and *Smith* because they "misconstrue and misapply the California Public Employees' Retirement Law . . . and result in the harsh forfeiture of public employees' disability retirement rights, in contravention of the California Constitution and principles of equity."

Perhaps recognizing that asking a trial court to flout stare decisis by "disavowing" higher court decisions was, to say the least, a long-shot, Martinez and SEIU's alternate approach was to get the court "to distinguish Martinez's case from the *Haywood*, *Smith* and *Vandergoot* cases on the grounds that . . . DSS contractually promised in a Settlement Agreement to . . . cooperate with the disability retirement application . . . DSS was aware . . . Martinez intended to imminently file. . . . State of California . . . agencies, their employees, and the labor unions that represent employees will be discouraged from settling disputes if, despite the parties' express contractual stipulations, [the] Board prohibits employees from pursuing disability retirement on the basis of *Haywood*/*Smith*/*Vandergoot* the precedents."

Martinez and SEIU further alleged that "CalPERS members, such as Petitioner Martinez and other SEIU Local 1000 unit members, have the vested right to retirement benefits including . . . disability retirement benefits." And, they alleged, in denying Martinez's application for those benefits, the Board violated the Contract Clauses of the state and federal constitutions (Cal. Const., art. I, § 9; U.S. Const., art. I, § 10, cl. 1) and its duty to administer the CalPERS system "in a manner that will assure prompt delivery of benefits . . . to the participants." (See Cal. Const., art. XVI, § 17, subds. (a)-(b).)

4

The petition's concluding allegation was that the Board has "a duty to comply with Article XVI, section 17 of the California Constitution and . . . to process disability retirement applications on the merits even where an employer has issued the applicant a notice . . . terminating their employment," which overrode the Board's "practice of cancelling the disability retirement applications of SEIU Local 1000's members such as [] Martinez on the sole ground that the applicants have at one point received a notice of termination from their employer."

The trial court denied the petition with a 31-page written order. Although it expressed considerable disagreement and unease with the reasoning of *Haywood* and *Smith*, the court concluded they "set out the relevant law" and must be followed. In addition to concluding that "*Vandergoot* is a reasonable extension of *Haywood* and *Smith*," the court stated it "gives substantial weight to administrative decisions interpreting statutes and case law within the agency's area of expertise," and thus "will give effect to *Vandergoot*."

## DISCUSSION

### Standard Of Review

"A public employee has a fundamental vested right to a disability pension if he or she is in fact disabled. [Citation.] Accordingly, the trial court was authorized to apply its independent judgment as to the weight of the evidence." (*Beckley v. Board of Administration etc*. (2013) 222 Cal.App.4th 691, 697.) The trial court in this case did so. Ordinarily, a reviewing court would examine the record to determine if substantial evidence supported the trial court's judgment. (E.g., *Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 824; *City of Fontana v. California Dept. of Tax & Fee Administration* (2017) 17 Cal.App.5th 899, 920.) However, with undisputed facts, this appeal presents only issues of law, which will receive our independent review. (E.g., *Yuba City Unified School Dist. v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 648, 654; *California Correctional Peace Officers' Assn. v. State of California* (2010) 188 Cal.App.4th 646, 650.) Even so, courts have given "great weight to CalPERS's

5

construction of California's Public Employees' Retirement Law." (*Beckley v. Board of Administration etc.*, *supra*, at p. 697 and decisions cited.)

### *Haywood*, *Smith*, *Vandergoot*

Given their significance to this appeal, it is useful to examine *Haywood*, *Smith*, and the Board's precedential *Vandergoot* decision, all of which involved firefighters claiming disability retirement.

According to the *Haywood* court, "This controversy presents the situation of an employee who challenged his employer's authority; was subjected to increasingly serious disciplinary actions; was ultimately terminated from employment for cause; was diagnosed by his experts as suffering from a major depression as a result of the disciplinary actions; has recovered from his depression with slight, if any, residual impairments; is capable of fully performing his former duties as a firefighter; but claims he is entitled to disability retirement because a return to work for his former employer would create a substantial risk of future depression should the old antagonisms with his supervisors arise again." (*Haywood*, 67 Cal.App.4th 1292, 1302.)

The key to the *Haywood* court's analysis was the language of section 21156 pegging disability to an employee being "incapacitated physically or mentally for the performance of his or her duties." The Court of Appeal reasoned that "there is an obvious distinction in public employment retirement laws between an employee who has become medically *unable* to perform his usual duties and one who has become *unwilling* to do so. Disability retirement laws address only the former." (*Haywood*, 67 Cal.App.4th 1292, 1296.)

The court explained: "[W]hile nothing in the PERS law restricts an employer's right to fire an unwilling employee, the Legislature has precluded an employer from terminating an employee because of medical disability if the employee would be otherwise eligible for disability retirement. (§ 21153.) In such a case, the employer must instead apply for the disability retirement of the employee. (*Ibid.*) In addition, while termination of an unwilling employee for cause results in a complete severance of the

6

employer-employee relationship (§ 19583.1[4]), disability retirement laws contemplate the potential reinstatement of that relationship if the employee recovers and no longer is disabled. Until an employee on disability retirement reaches the age of voluntary retirement, an employer may require the employee to undergo a medical examination to determine whether the disability continues. (§ 21192.) And an employee on disability retirement may apply for reinstatement on the ground of recovery. (*Ibid.*) If an employee on disability retirement is found not to be disabled any longer, the employer may reinstate the employee, and his disability allowance terminates. (§ 21193.)" (*Haywood*, 67 Cal.App.4th 1292, 1305.)

From this followed the conclusion that "Haywood's firing for cause constituted a complete severance of the employer-employee relationship, thus eliminating a necessary requisite for disability retirement—the potential reinstatement of his employment relationship with the District if it ultimately is determined that he no longer is disabled." (*Haywood*, 67 Cal.App.4th 1292, 1297.) In short, termination for cause "renders the employee ineligible for disability retirement." (*Ibid.*) But the court noted two caveats: "There is no claim, or evidence which would support a claim, that the termination for cause was due to behavior caused by a physical or mental condition. And there is no claim, or evidence which would support a claim, of eligibility for disability retirement that could have been presented before the disciplinary actions were taken." (*Id.* at p. 1306.)

*Smith* involved another firefighter discharged for cause, whose strategy on appeal was to directly challenge the soundness of *Haywood*. The court rejected the contention

---

[4] Which provides: "Dismissal of an employee from the service shall, unless otherwise ordered by the board: [¶] (a) Constitute a dismissal as of the same date from any and all positions which the employee may hold in the state civil service. [¶] (b) Result in the automatic removal of the employee's name from any and all employment lists on which it may appear. [¶] (c) Terminate the salary of the employee as of the date of dismissal except that he shall be paid any unpaid salary, and paid for any and all unused and accumulated vacation and any and all accumulated compensating time off or overtime to his credit as of the date of dismissal."

that *Haywood* was "an 'unenacted' rule of law . . . . We found our holding inherent in the structure of the statutes governing disability retirement, and the respect we are to accord the disciplinary powers of state agencies. If *Haywood* were indeed a judicial derelict on the waters of the law of disability retirement [citation], the Legislature has had five years in which to scuttle it. The absence of legislative action supports our belief in the propriety of our interpretation." (*Smith*, 120 Cal.App.4th 194, 204.)

The *Smith* court reiterated the "qualification in *Haywood* that its ruling does not apply to a dismissal that 'preempts' an otherwise valid claim for disability retirement. . . . [I]t does not refer only to a dismissal *intended* to thwart a claim for disability retirement, because a dismissal for cause cannot defeat an employee's *matured* right to a disability retirement antedating the event providing cause for the dismissal." (*Smith*, 120 Cal.App.4th 194, 198.) "[E]ven if an agency dismisses an employee *solely* for a cause *unrelated* to a disabling medical condition, this cannot result in the forfeiture of a matured right to a [disability] pension absent express legislative direction to that effect. [Citations.] Thus, if a plaintiff were able to prove that the right to a disability retirement matured before the date of the event giving cause to dismiss, the dismissal cannot preempt the right to receive a disability pension . . . ." (*Id*. at p. 206.)

The *Smith* court explained: "A vested right matures when there is an unconditional right to immediate payment." A right to a disability pension vests "when the pension board determine[s] that the employee is no longer capable of performing his duties." (*Smith*, 120 Cal.App.4th 194, 206.) In other words, a right to a disability retirement is "mature" once the pension board authority approves the disability application.[5] Firefighter Smith did not qualify: "In the present case, a CalPERS

---

[5] "Application . . . for retirement of a member for disability may be made by: [¶] (a) The head of the office or department in which the member is or was last employed, if the member is a state member other than a university member. [¶] (b) The university if the member is an employee of the university. [¶] (c) The governing body, or an official designated by the governing body, of the contracting agency, if the member is an employee of the contracting agency. [¶] (d) The member or any person [on] his or her behalf." (§ 21152.) Section 21153 provides that "an employer . . . shall apply for

determination of eligibility did not antedate the unsuccessful certification on the ladder truck. His right to a disability retirement was thus immature, and his dismissal for cause defeated it." (*Smith*, 120 Cal.App.4th 194, 206.)

However, the *Smith* court allowed there might be an equitable exception to this matured disability requirement: "Conceivably, there may be facts under which a court, applying principles of equity, will deem an employee's right to a disability retirement to be matured and thus survive a dismissal for cause." The court provided two examples: (1) If an employee "had an impending ruling on a claim for a disability pension that was delayed, through no fault of his own, until after his dismissal" or (2) if there is undisputed evidence that the employee "was eligible for a CalPERS disability retirement, such that a favorable decision on his claim would have been a foregone conclusion (as perhaps with a loss of limb)." Firefighter Smith came within neither of these situations. (*Smith*, 120 Cal.App.4th 194, 206–207.)

*Vandergoot* involved a firefighter employed by the Department of Forestry and Fire Protection who applied for disability retirement after he was terminated for cause. "CalPERS determined that [Vandergoot] was barred from any entitlement to disability retirement because he was terminated for cause and the discharge was neither the ultimate result of a disabling medical condition nor preemptive of any otherwise valid claim for disability retirement." While Vandergoot's appeal to the State Personnel Board was pending, he and the Department of Forestry reached a settlement that was similar to the one between Martinez and DSS, though unlike Martinez, Vandergoot did not receive a cash payment or an assurance that his former employer would assist his application for a disability retirement.

The Board framed the issue before it as "whether CalPERS may properly apply *Haywood* in the absence of an actual dismissal for cause." The Board recognized the

---

disability retirement of any member believed to be disabled . . . ." This language "imposes a ministerial duty on an employer to apply for disability retirement on behalf of an employee . . . ." (*Riverside Sheriffs' Assn. v. County of Riverside* (2011) 193 Cal.App.4th 20, 29.)

essential point of *Haywood* as authorizing an affirmative answer: "*Haywood* makes it clear that a necessary requisite for disability retirement is the potential reinstatement of the employment relationship . . . . Such is not possible here. The employment relationship has not only been severed, but the terms of the Stipulation and Settlement Agreement expressly lock [Vandergoot] out from being reinstated. Such a circumstance must be viewed as wholly inconsistent with the policy behind and rationale for disability retirement."

First, quoting from *Haywood*, the Board showed how the mechanics of the disability process could not function for persons in Vandergoot's situation:

" '[D]isability retirement laws contemplate the potential reinstatement of that relationship if the employee recovers and no longer is disabled. Until an employee on disability retirement reaches an age of voluntary retirement, an employer may require the employee to undergo a medical examination to determine whether the disability continues. (§ 21192.) And an employee on disability retirement may apply for reinstatement on the ground of recovery. (*Ibid.*) If an employee on disability retirement is found not to be disabled any longer, the employer may reinstate the employee, and his disability allowance terminates. (§ 21193.)'

"Were [Vandergoot] to receive a disability retirement allowance, he would have no employer who could require him to undergo a medical examination under Government Code section 21192. And it is no longer possible for him to be reinstated under Government Code section 21193. These necessary prerequisites for receiving a disability retirement allowance are simply not present in this case. For this reason alone, CalPERS can fairly consider the terms of the Stipulation for Settlement . . . as being tantamount to a dismissal for purposes of applying the *Haywood* criteria."

The Board then turned its attention to *Smith*:
"*Smith* recognized that even when there has not yet been a determination of eligibility [for disability], there may be facts which a court, applying principles of equity, will deem an employee's right to a disability retirement. [Citation.] *Smith* then went through a number of situations where equitable principles might apply. They are also considered

10

here.  As in *Smith*, this is not a case where [Vandergoot] had an impending ruling on a claim for a CalPERS disability pension that was delayed through no fault of his own. [Citation.]  Here, [Vandergoot] did not even initiate the process for receiving an industrial disability retirement allowance until after he received the NOAA and after he received the adverse Skelly determination [i. e., the denial of his administrative appeal of his termination by the State Personnel Board].  Nor was there 'undisputed evidence' that [Vandergoot] was eligible for a CalPERS disability retirement, 'such that a favorable decision on his claim would have been a foregone conclusion (as perhaps with a loss of limb).'  [Citation.]"  In short, Vandergoot failed to establish that his termination was "the ultimate result of a disabling medical condition" exception mentioned in *Haywood*, or that he had a matured right to a disability retirement as allowed by *Smith*.

## Appellants' Arguments

Martinez and SEIU (who will hereafter be referred to as "appellants") open their brief with a candid admission of their goal:  "Appellants request this Court hold that *Haywood* and *Smith* both have been superseded by legislation, are inconsistent with subsequent case law, and declare that *Vandergoot* is no longer precedential authority."

Section 21156 has been amended twice since *Haywood* and *Smith* were decided. The first merely moved the words "in the state service" within the statute.  (Stats. 2006, ch. 118, § 10.)  The second, in 2008, divided the statute into subdivisions and added what is now subdivision (a)(2).  (Stats. 2008, ch. 370, § 3.)  That subdivision, which is the keystone for all the arguments advanced by appellants, provides:  "In determining whether a member is eligible to retire for disability, the board or governing body of the contracting agency shall make a determination on the basis of competent medical opinion and shall not use disability retirement as a substitute for the disciplinary process."

As appellants see it, "The outcome of this case should begin and end with . . . section 21156[, subdivision] (a)(2)," which in their view mandates that determinations of eligibility for disability retirement can only be made on the basis of competent medical opinion.  Appellants submit that *Haywood* has been "superseded" by subdivision (a)(2) in that "the *Haywood* court examined Haywood's disciplinary history rather than medical

11

evidence of his disability, in clear contravention of current statutory authority," that is, subdivision (a)(2), "and then created the requirement that a disabled retiree have the potential for reinstatement." And, appellants go on, *Haywood*'s creation of the "potential for reinstatement" requirement was created out of the blue, "is unsupported by any law, whatsoever, past or present," and "conflicts with the current statutory scheme." Moreover, the concept of the "potential for reinstatement" is "inconsistent with past and present statutes" allowing for reinstatement.

The same is also true with respect to what appellants treat as "*Haywood*'s underlying rationale," namely, the creation of "the unable/unwilling dichotomy to assure disability retirement benefits would be provided only to persons unable to work rather than those who are unwilling." This dichotomy, they assert was also overturned by the enactment of subdivision (a)(2), which "assures disability retirement is available only to employees unable to perform job duties, not those unwilling to." "While the unable/unwilling dichotomy might have been a helpful analytical tool for purposes of *Haywood*, the legislative requirement that disability retirement eligibility determinations be made on the basis of competent medical opinion would resolve the problem *Haywood* presented."

Next, appellants argue that *Haywood*'s "interpretation" of section 21193[6]—which covers reinstatement when an employee determined to be no longer "incapacitated for

---

[6] Which provides: "If the determination pursuant to Section 21192 is that the recipient is not so incapacitated for duty in the position held when retired for disability or in a position in the same classification or in the position with regard to which he or she has applied for reinstatement and his or her employer offers to reinstate that employee, his or her disability retirement allowance shall be canceled immediately, and he or she shall become a member of this system.

"If the recipient was an employee of the state or of the university and is so determined to be not incapacitated for duty in the position held when retired for disability or in a position in the same class, he or she shall be reinstated, at his or her option, to that position. However, in that case, acceptance of any other position shall immediately terminate any right to reinstatement. A recipient who is found to continue to be incapacitated for duty in his or her former position and class, but not incapacitated for duty in another position for which he or she has applied for reinstatement and who

12

duty"—is "inconsistent" with the "recent interpretation" of that statute in *California Dept. of Justice v. Board of Administration etc.* (2015) 242 Cal.App.4th 133. According to appellants, that decision "establishes that when it is unknown whether an individual is eligible for state employment, the former employer's mandatory duty to extend an offer of reinstatement to the employee continues. The employer cannot create conditions that undermine its mandatory reinstatement obligations."

Pointing to statutes allowing former employees terminated for cause to apply for reinstatement (e.g., §§ 18941, 20969.3, 21190–21203), appellants conclude that the Public Employees Retirement Law "does not establish, either expressly or by clear implication, that dismissal for cause precludes individuals otherwise eligible for disability retirement from receiving disability retirement benefits."

Turning to *Smith*, appellants argue "following *Haywood*, *Smith* held 'dismissal for cause consequently extinguished [Smith's] right to a disability retirement,' " And by doing so, "*Smith* failed to consider medical evidence in order to determine whether the plaintiff was eligible for disability retirement, contrary to the present statutory requirements. Therefore, Gov. Code § 21156(a)(2) supersedes *Smith* as well."

As for *Vandergoot*, to appellants it is vulnerable not only because of its reliance on *Haywood* and *Smith:* "what is more, *Vandergoot* fails to distinguish [between] an individual fired for cause from one who resigned pursuant to a settlement agreement where the merits of the termination have not been determined. Failing to recognize this distinction, *Vandergoot* erroneously applied *Haywood*'s analysis of section 19583.1 to

---

accepts employment in the other position, shall upon subsequent discontinuance of incapacity for service in his or her former position or a position in the same class, as determined by the board under Section 21192, be reinstated at his or her option to that position.

"If the recipient was an employee of a contracting agency other than a local safety member, with the exception of a school safety member, the board shall notify it that his or her disability has terminated and that he or she is eligible for reinstatement to duty. The fact that he or she was retired for disability does not prejudice any right to reinstatement to duty which he or she may claim."

section 21193, where it does not lie because section 21193 deals solely with reinstatement. By resting its conclusion on section 19583.1, applicable only to employees terminated for cause, *Vandergoot* ignores cases such as the present matter where employees have resigned pursuant to a settlement agreement and the termination for cause has been withdrawn. *Such individuals remain eligible for reinstatement.* (Gov. Code § 19140(a).)

"Even if *Haywood*'s analysis of section 19583.1 were applicable, which it is not, *Vandergoot* ignores the statutes that allow terminated employees to return to state service in any one of the many other departments. Said otherwise, individuals who resign pursuant to settlement agreements with reemployment waivers remain potentially eligible for reinstatement to every state agency except the one from which they resigned by mutual agreement to settle a dispute. Therefore, *Vandergoot,* like *Haywood,* overstates the so-called 'complete severance' of the employer-employee relationship. The faulty premises on which *Vandergoot* relies undermine its conclusion, along with its precedential value." (Fn. omitted.)

Finally, "There is no evidence the legislature intended reemployment waivers in settlement agreements to result in forfeiture of vested benefits. But *Vandergoot* results in this exact outcome and, therefore, discourages state employees from settling disputes regarding discipline in order to preserve their vested disability retirement benefit eligibility for just this reason. The result is that *Vandergoot* contravenes longstanding public policy favoring settlement, thereby increasing the expense and persistency of litigation at public cost."

In short, appellants challenge the continued soundness of *Haywood* and *Smith.* Given that this court is not compelled to follow those decisions (*Gonzalez v. Lew* (2018) 20 Cal.App.5th 155, 166, fn. 7 [" 'There is no horizontal stare decisis in the California Court[s] of Appeal' "]; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 498, pp. 558–559), they are clearly hoping that we will take up the challenge they made in the trial court—to "disavow" *Haywood* and *Smith* and thus undermine *Vandergoot.*

14

It is useful to be clear about the scope of our analysis. In light of their full frontal assault on *Haywood* and *Smith*, appellants do not maintain that Martinez can establish that the conduct which led to her termination was the product of the same conditions for which she would claim a disability retirement. Nor do they contend that Martinez had a matured entitlement to a disability retirement prior to DSS commencing the process to terminate her employment and appellants have abandoned their argument to the Board that principles of equity will support the existence of such a matured claim. In short, they do not claim Martinez qualifies for any of the exceptions identified by *Haywood* and *Smith*. Lastly, they make no claim that Martinez is the victim of a violation of either the United States or the California constitutions.

## Application

At the outset, we acknowledge the obvious, that the term "disability" has no fixed, universal, or constant meaning. It may be partial or total. The term can be found in statutory contexts ranging from workers' compensation (e. g., Lab. Code, § 4650 et seq.) to discrimination against pregnant women (§ 12945). We therefore emphasize that we are addressing disability only as that term is used in Article 6 ("Disability Retirement," §§ 21150–21176) of Chapter 12 ("Retirement from Employment," § 21060 et seq.) of the Public Employees Retirement Law. And in this context "disability retirement" has a very distinct meaning. It is not "retirement" in the ordinary sense, nor is it a permanent condition. It is a sort of temporary hiatus.

As noted, appellants rest their case on subdivision (a)(2) of section 21156. They deem it "dispositive." They are mistaken.

Subdivision (a)(2) is but a single sentence in a single statute, and cannot be examined to the exclusion of the entirety of the Public Employees Retirement Law. (See, e. g., *Mendoza v. Nordstrom, Inc*. (2017) 2 Cal.5th 1074, 1084 [" 'We do not construe statutory language in isolation, but rather as a thread in the fabric of the entire statutory scheme of which it is a part' "]; *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 ["The meaning of a statute may not be determined from a single word or sentence . . . . [E]ach sentence must be read not in isolation but in the light of the statutory scheme"].) There

has been no change in section 21156 equating disability with the employee being "incapacitated physically or mentally for the performance of his or her duties."[7]  The nature of incapacity excludes fleeting periods of inability to perform.  " 'Disability' and 'incapacity for performance of duty' as a basis of retirement, mean disability of permanent or extended duration."  (§ 20026; see *Nolan v. City of Anaheim* (2004) 33 Cal.3d 335, 343–344 [" 'incapacitated for the performance of duty,' for the purposes of former section 21022, meant *the substantial inability of the applicant to perform his usual duties*," italics added.)

The 2008 enactment that added subdivision (a)(2) to section 21156 (Stats. 2008, ch. 370, § 3) was modest in scope, amending three existing statutes and adding two others:  Education Code sections 24003 and 24103 were amended with language similar to subdivision (a)(2)(i), and the same general language also appears in the new sections 31720.3 and 53222.5.  The connecting theme was disability benefits for public employees.  The intent and scope of the bill was explained in the Legislative Counsel's summary digest:

"The Public Employees' Retirement System provides for the granting of disability benefits to members in state service.  Existing law generally provides that if a medical examination and other available information show to the satisfaction of the Board of Administration of the Public Employees' Retirement System that a member in state service is incapacitated physically or mentally for the performance of his or her duties and is eligible to retire for disability, the board shall immediately retire him or  her for disability.  The State Teachers' Retirement System permits the board of administration of the system to authorize payment of a disability allowance or disability retirement allowance, requires a member to provide medical documentation to substantiate the claim qualifying the member for the disability allowance or disability retirement allowance, and permits the board to order a medical examination in this regard, as specified.  The County

---

[7]  This is also the standard for local employees whose retirement is administered by their county under the County Employees Retirement Law of 1837.  (§§ 31724–31725.)

16

Employees Retirement Law of 1937 permits a member permanently incapacitated for duty to retire for disability only if specified criteria are met.  Existing law permits the legislative body of a local agency to establish a pension trust, as specified, for the benefit of its officers and employees and permits that legislative body to establish reciprocal retirement benefits with other specified retirement systems.

"This bill would restrict the board or body administering a retirement system or a pension trust, as described above, with respect to the medical opinion or documentation used to determine whether a member is eligible to retire for disability, as specified, and would prohibit the use of disability retirement as a substitute for the disciplinary process." (Legis. Counsel's Dig., Assem. Bill No. 2023 (2007–2008 Reg. Sess.) 5 Stats. 2008, Summary Dig., p. 152.)

The measure codified one of the recommendations of the Public Employee Post-Employment Benefits Commission established by Governor Schwarzenegger in December 2006.  Change was needed, it concluded, because " 'there can be, and has been, significant differences in standards between employers as to what constitutes a disability, with some local agencies at times using disability retirement as a substitute for the disciplinary process.' " (Sen. Com. on Public Employment and Retirement, Analysis of Assem. Bill No. 2023 (2007–2008 Reg. Sess.), as amended June 18, 2008, p. 3.)  The complete bill history prepared by the Assembly shows it was passed in both houses without a single negative vote.  All of five parts of the bill declared the sole point that eligibility for disability retirement should be decided on the basis of medical evidence, not the desire to get rid of an employee without going through the process of disciplining that employee.  It was, in short, unopposed and uncontroversial.  There is not a single mention of either *Haywood* or *Smith* in the legislative history.  In short, the central pillar of *Haywood* and *Smith*—the employee's inability to resume performing his or her duties—has not changed.

However, if the disciplinary process is used, and results in a termination for cause, there is nothing in the legislative history of subdivision (a)(2) suggesting the terminated employee may then apply for a disability retirement.  Dismissal for cause is a

"[p]ermanent separation . . . from state service," while disability retirement is only a "[t]emporary separation . . . from state service." (Cal. Code Regs., tit. 2, § 446; see *Willis v. State of California* (1994) 22 Cal.App.4th 287, 291 ["A disability retirement is not, by definition, permanent. (Cal. Code Regs., tit. 2, § 446.)"].) This "dichotomy," to use appellants' term, is fully consistent with the purposes of the disability procedures outlined by the *Haywood* court, procedures meant to ascertain the duration of an employee's inability to return to work.

Appellants' arguments do not persuade us that fundamental change of that structure was either intended or accomplished by subdivision (a)(2). The nature of disability retirement was not changed. The procedure for obtaining benefits has changed only in one respect. The concept of reinstatement is still the desired conclusion. The mechanism for reinstatement, the medical examination, is still in place. The "unwilling/unable dichotomy" is still, as the *Smith* court put it, "inherent in the structure of the statutes governing disability retirement" (*Smith, supra,* 120 Cal.App.4th 194, 204) of the Public Employees Retirement Law. In the language of *Haywood*, Martinez's voluntary resignation "constituted a complete severance of the employer-employee relationship, thus eliminating a necessary requisite for disability retirement—the potential reinstatement of [her] employment relationship." (*Haywood, supra,* 67 Cal.App.4th 1292, 1297.) In these circumstances, we cannot agree with appellants that the enactment of subdivision (a)(2) "superseded" *Haywood* and *Smith*.

We also conclude that *Haywood* and *Smith* are not "inconsistent with subsequent case law," specifically, *California Dept. of Justice v. Board of Administration etc.*, *supra*, 242 Cal.App.4th 133. The issue there was whether an employer was required to reinstate an employee who was no longer incapacitated by the physical difficulty that led to the disability retirement. The employer wanted to make reinstatement dependent upon a formal offer of reinstatement conditioned on the employee completing "medical and psychological evaluations and a background investigation." (*Id*. at p. 137.)

The Court of Appeal held that both of the employer's arguments were contrary to section 21193 (quoted at fn. 6, *ante*): "The first paragraph of section 21193 suggests

18

there is a two-step process for reinstatement, but when read in context with the second paragraph, it is clear that a state employee who is not incapacitated for duty must be reinstated. An offer to reinstate the employee is mandatory under those circumstances. DOJ was required to reinstate [the employee] after CalPERS determined that she was no longer incapacitated for duty." (*California Dept. of Justice v. Board of Administration etc.*, *supra*, 242 Cal.App.4th 133, 142.) Moreover, "[m]andatory reinstatement, by itself, does not require medical and psychological evaluations or a new background investigation. Placing conditions on [the employee] prior to reinstatement would be contrary to the mandatory reinstatement provisions of section 21193." (*Ibid.*)

It may be that criteria for reinstatement have been relaxed, and that Martinez may have a theoretical right to seek employment with a state agency other than DSS. And it is true that there are circumstances where an application for disability benefits can be submitted following termination. (See § 21154.) Even so, there is nothing in the decision providing support to appellants' reading of it, namely, that the Court of Appeal held that a "former employer" has a "mandatory duty to extend an offer of reinstatement" that continues past termination. That stands the very nature—the temporary quality—of disability on its head.

As already mentioned, in 2004 the *Smith* court noted: "If *Haywood* were indeed a judicial derelict on the waters of the law of disability retirement [citation], the Legislature has had five years in which to scuttle it. The absence of legislative action supports our belief in the propriety of our interpretation." (*Smith, supra,* 120 Cal.App.4th 194, 204.) That is even more true if the legislative inaction spans more than 20 years. During those years, *Smith's* central premise—what appellants term the "unwilling/unable dichotomy"—has never been challenged—and has become accepted. (E. g., *Riverside Sheriffs' Assn. v. County of Riverside* (2009) 173 Cal.App.4th 1410, 1419–1420; Holtzman, Cal. Practice Guide: Public Sector Employment Litigation (The Rutter Group 2017) ¶¶ 6:478 to 6:479, p. 6-33.)

In these circumstances, what we said in *Wolfe v. Dublin Unified School Dist.* (1997) 56 Cal.App.4th 126, 137 is apposite: " 'We acknowledge we are not bound by an

opinion of another District Court of Appeal, however persuasive it might be. [Citation.] We respect stare decisis, however, which serves the important goals of stability in the law and predictability of decision. Thus, we ordinarily follow the decisions of other districts without good reason to disagree. [Citation.]' [Citation.] No compelling reason has been advanced . . . for clouding 21 years of precedent under [*Haywood*]." (See 9 Witkin, Cal. Procedure, *supra*, Appeal, § 499, p. 560 ["Normally, a Court of Appeal will follow prior decisions of its own or other districts or divisions"].) We therefore decline appellants' invitation to "disavow" *Haywood* and *Smith*.

With respect to *Vandergoot*, it was designated as a precedential decision because the Board believed it had "a significant legal or policy determination of general application that is likely to recur." (See fn. 2, *ante*.) The Board presumably did so because employees leaving state service with a settlement of a pending termination for cause were becoming sufficiently common to merit a statement of policy. The Legislature and the Board have decided that resignation effects a "permanent separation" from state service. (§ 19996 ["Any . . . employee may be . . . permanently separated through resignation"]; Cal. Code Regs., tit. 2, § 446 ["Permanent separations from state service shall include . . . resignation"].) Which is exactly what Martinez did when she agreed to leave state service and "never again apply for or accept any employment" with DSS. Notwithstanding the theoretical possibility of reinstatement, Martinez was not going to return to her former job. From this perspective, *Vandergoot* is eminently logical: resignation in these circumstances does indeed appear to be "tantamount to a dismissal for purposes of applying the *Haywood* criteria."

A long-standing principle is that "the Board's interpretation of the Public Employees Retirement Law is accorded great weight unless clearly erroneous." (*City of Fremont v. Board of Administration* (1989) 214 Cal.App.3d 1026, 1033; accord, e. g., *Wheeler v. Board of Administration of Public Employees' Retirement System* (1979) 25 Cal.3d 600, 605; *California Dept. of Justice v. Board of Administration etc., supra,* 242 Cal.App.4th 133, 138.) In light of the foregoing, *Vandergoot* cannot be so condemned.

## DISPOSITION

The Judgment Denying Writ of Mandate is affirmed.

_____
Richman, J.

We concur:

_____
Kline, P. J.

_____
Stewart, J.

*Martinez v. CalPERS* (A153679)

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Honorable Kimberly Colwell |
| Attorney for Plaintiff and Appellant Linda Martinez: | Weinberg, Roger & Rosenfeld, Emily P. Rich, Kerianne R. Steele, Paul K. Pfeilschiefter; |
| Attorney for Plaintiff and Appellant Service Employees International Union, Local 1000: | SEIU Local 1000, Anne Maria Giese, Theresa C. Witherspoon, Nicole Heeder; |
| Attorney Defendant and Respondent Public Employees' Retirement System: | Public Employees' Retirement System, Matthew G. Jacobs, Austa Wakily. |